UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GISCEL ROSADO,

    Plaintiff,

v.        Case No. 6:20-cv-2003-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

### **ORDER**

This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Plaintiff argues the Administrative Law Judge (ALJ) erred by discounting the opinions of consultative examiner Sergio Ramirez, M.D. and state agency consultant Keith Bauer, M.D. regarding her work-related limitations. After considering Plaintiff's arguments, Defendant's response, and the administrative record (Docs. 20, 27), I find the ALJ did not apply the proper standards, and the decision that Plaintiff is not disabled is unsupported by substantial evidence. I reverse the ALJ's decision.

    *A. Background*

Plaintiff Giscel Rosado was born on March 15, 1978. (R. 27) She was 38 years old on her alleged disability onset date of March 2, 2017.[1] (R. 17, 27) She is married with three

---

[1] Plaintiff's date last insured (DLI) for DIB purposes was December 31, 2018. (R. 20) For DIB claims, a claimant is eligible for benefits if she demonstrates disability on or before her DLI. 42 U.S.C. § 423(a)(1)(A). Plaintiff must show she was disabled on or before December 31, 2018. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

1

minor children. She has a college education and past work experience as a teacher's aide and a special education teacher. (R. 27) Plaintiff alleges disability due to depression, anxiety, tachycardia, arthritis in her spine and left foot, type 2 diabetes, anemia, a sleep disorder, dizziness, hypertension, and thyroid issues. (R. 82) She stopped working as a teacher for children with cerebral palsy in 2013 because "[m]y anxiety was really bad. Very stressful. I had to lift the kids in the wheelchair. Even though they were younger kids, three and four-year-olds, but with my back issues, I couldn't work there anymore." (R. 47)

Plaintiff relies on help from her husband and mom (who lives in the same community) for all household chores and childcare. In her words, "I cannot bend my back or squat, or just reach to get the stuff from the washer. I cannot do any of that." (R. 49) She uses a back brace and a left shoe insert to help with her arthritis pain and a walker because "I feel like with my back pain, I feel like I'm not stable enough to get out of the car, go in the car, walk down the sidewalk. I feel unstable and afraid I'm going to fall. So I use the walker." (R. 51-52) She testified to taking a long list of daily medications, including Clonazepam, lithium, Zoloft, Trazodone, Atenolol, prednisone, naproxen, lisinopril, and Metformin. (R. 45-46) These medications cause dizziness, nausea, fatigue, blurred vision, headaches, chest pain, heartburn, and weakness. (*Id.*)

After a hearing, the ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease, high blood pressure, diabetes mellitus, headaches, degenerative joint disease (left foot), hypothyroidism, anemia, depression, and anxiety. (R. 20) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as she has the RFC to perform sedentary work with limitations:

> [L]ift and/or carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can stand/walk for 2 hours and sit for 6 hours out of an 8-hour workday. She can push/pull as much as she can lift/carry. She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch but never climb ladders, ropes or scaffolds and crawl. She can frequently reach, handle and finger with both arms/hands/fingers. She can never be exposed to extreme cold, have proximity to moving mechanical parts or work in high, exposed places. She is able to perform simple, routine, repetitive tasks, or jobs that can be learned in 30 days or less. She is able to understand, remember and carry out simple instructions.

(R. 22)

The ALJ found that, with this RFC, Plaintiff could not perform her past relevant work as a teacher or teacher's aide but could work as a table worker, document preparer, or cutter/paster (R. 28) The Appeals Council denied review. Plaintiff, who has exhausted her administrative remedies, filed this action.

   B. *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§

404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the

proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

#### 1. Dr. Ramirez's consultative examination

Plaintiff argues the ALJ erred in his consideration of Dr. Ramirez's October 19, 2019 consultative opinion as well as the work-related limitations identified by state agency non-examining medical expert Dr. Bauer in his December 3, 2018 review of Plaintiff's claim at the reconsideration level. I agree with Plaintiff – the ALJ did not follow applicable regulations in assessing Dr. Ramirez's opinion.

In this case, revised Social Security Administration ("SSA") regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed her claim on July 2, 2018. (R. 17)  As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017); *see also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019).[2]

---

[2] This was termed the treating physician rule under the old regulations, and it required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011).

The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). But the first two factors are the most important: "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJs must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record. *See Cook v.*

*Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

The new regulations also change the standards the ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). While the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[3] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And, in assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations do not require the ALJ to explain the consideration of each opinion from the same source. *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Here, the ALJ did not articulate his consideration of the supportability and consistency factors in accordance with the new regulatory requirements when evaluating Dr. Ramirez's consultative opinion. Dr. Ramirez conducted a consultative physical examination of Plaintiff at the agency's request on October 19, 2019. (R. 781-87) Many of his findings were within the normal range (for example, he noted Plaintiff had normal strength in her upper and lower extremities), except he assessed Plaintiff with tenderness in her lumbar spine, a positive straight leg test on her left side, and significantly reduced range of motion in her cervical and lumbar spine. X-rays Dr. Ramirez ordered of Plaintiff's lumbosacral spine and left foot were

---

[3] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

unremarkable. Dr. Ramirez did not assess Plaintiff's ability to get on and off the examination table, walk on her heels and toes, and squat and then rise, because she was not willing to perform these tests due to worries about back pain and losing her balance. He noted that Plaintiff used a four-point walker during the exam and was unwilling to attempt to walk without it. He wrote: "it is unclear if [Plaintiff] really needs [the walker] or if this is more of an anxiety issue." (R. 787) Dr. Ramirez opined that Plaintiff cannot lift anything "due to inability to bend down per her report[,]" can carry 10-20 pounds occasionally "but needs to hold on to her walker per patient[,]" is unable to sit/stand for up to eight hours per day, and needs breaks to "lay down and relieve tension from her back." (*Id.*)

The ALJ did not refer to Dr. Ramirez by name but references his findings. (R. 23-27) For example, the ALJ noted Plaintiff's normal X-rays and normal cardiovascular and neurological examinations. Interestingly, referencing Dr. Ramirez's report, the ALJ wrote in one place that Plaintiff's "musculoskeletal examination showed normal range of motion and strength[,]" (R. 25) but in another place (also citing Dr. Ramirez), the ALJ wrote that Planitiff's "[r]ange of motion was decreased on forward flexion and extension of her cervical and lumbar spine as well as lateral flexion for her lumbar spine." (R. 24) Ultimately, the ALJ found Dr. Ramirez's opinion "partially persuasive." (R. 26) He explained: "Although the examiner did physically examine the claimant, the claimant's refusal to allow the examiner an opportunity to assess her ability to walk without the use of an assistive device somewhat negates the examiner's findings." (R. 26-27)

This explanation offers no insight into how the ALJ considered the factors of supportability and consistency in evaluating Dr. Ramirez's report. The ALJ wrote: "The undersigned also considered the medical opinion(s) and prior administrative medical

8

finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. 22). But these regulations instruct that the most important factors when evaluating a claimant's medical sources are supportability and consistency. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ failed to explain how his consideration of Dr. Ramirez's opinion tracks the regulation's requirements.

Although the ALJ cited several of Dr. Ramirez's examination findings, these generalized observations do not sufficiently address the consistency of his opinion with other evidence. And with respect to supportability, there is nothing in the ALJ's analysis that explains how the ALJ considered this factor. *See Mayfield v. Comm'r of Soc. Sec.*, No. 7:20-cv-1040-ACA, 2021 WL 5300295, at * 5 (N.D. Ala. Nov. 15, 2021) (reversing Commissioner's decision for failing to identify a "real inconsistency" or explain supportability analysis). The ALJ's statement that Plaintiff's unwillingness to participate in the exam without her walker "somewhat negates" Dr. Ramirez's findings is vague. Without more, I cannot say the ALJ evaluated Dr. Ramirez's findings in accordance with the regulations. On remand, the ALJ should explain his consideration of the persuasiveness of Dr. Ramirez's, focusing on the factors of supportability and consistency.[4]

*D. Conclusion*

For the reasons stated above, the ALJ's decision is not supported by substantial evidence. It is ORDERED:

    (1) The ALJ's decision is REVERSED; and

---

[4] As remand is appropriate on the first issue, I do not address Plaintiff's argument that the ALJ erred in his consideration of Dr. Bauer's findings.

      (2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE and ORDERED in Tampa, Florida on May 5, 2022.

*/s/ Mark A. Pizzo*
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE